# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AES SHADY POINT LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.  CIV-20-00910-PRW |
| OKLAHOMA GAS & ELECTRIC CORPORATION, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Plaintiff's Motion to Remand and Brief in Support (Dkt. 11). Plaintiff asks the Court to remand the action to state court in accordance with a mandatory forum selection clause in the contract under which it brings its breach of contract claim. Defendant argues in response that the action must remain in federal court pursuant to a different mandatory forum selection clause, contained in a later contract between the two. The question before the Court, then, is which of these forum selection clauses controls.

For the reasons that follow, the Court concludes that the forum selection clause in the earlier contract controls and is mandatory. Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand (Dkt. 11) and **REMANDS** this action back to the District Court of Oklahoma County.

*Background*

Plaintiff, AES Shady Point LLC, ("AES")[1] owned and operated a powerplant in Le Flore County, Oklahoma (the "Facility"). Defendant, Oklahoma Gas & Electric Company, ("OG&E")[2] is a utility company that delivers power to customers throughout Oklahoma and Arkansas.

In December of 1985, AES and OG&E entered into the Power Sales Agreement (the "PSA").[3] Under the PSA, AES agreed to commit power output from the Facility to OG&E.[4] In return, OG&E agreed to buy that output.[5] The Parties amended and extended the PSA several times over the years, ending only when OG&E sent notice of its intent to terminate in late August of 2018,[6] as permitted by the PSA.[7] Notably, this termination did "not discharge either Party from any obligations which may have accrued under the terms of the [PSA] prior to such termination."[8]

---

[1] The Court refers to both AES Shady Point LLC and its forerunner, AES Shady Point, Inc., simply as "AES."

[2] Oklahoma Gas & Electric Company notes that it was incorrectly named as Oklahoma Gas & Electric Corporation. *See* Notice of Removal (Dkt. 1) at 1.

[3] *See* Am. Power Sales Agreement (Dkt. 11, Ex. 1) at 1.

[4] *See id.* § 2.1.

[5] *See id.*

[6] Pet. (Dkt. 1, Ex. 1) at 2; Def.'s Resp. to Pl.'s Mot. to Remand with Br. in Supp. (Dkt. 18) at 10.

[7] *See* Am. Power Sales Agreement (Dkt. 11, Ex. 1) § 3.1.

[8] *Id.* § 3.3(d).

In lieu of their soon-to-end arrangement under the PSA, the Parties began negotiating the sale of the Facility itself from AES to OG&E.[9] Eventually, on December 20, 2018, these negotiations culminated in a sale, memorialized in the Asset Purchase Agreement (the "APA").[10]

Meanwhile, the termination of the PSA became effective on January 15, 2019,[11] and OG&E made its last payment thereunder on February 15, 2019.[12]

Then, on April 18, 2019, AES emailed OG&E claiming it was owed seven million, four hundred thousand dollars ($7,400,000.00) in unpaid "capacity payments" under the now-terminated PSA.[13] "[W]hen you count the months of operations for the contract period of Jan 1991 through Jan 15 2019, compared to the months of invoices/ payments," AES explained, it "was short by one full month of payment."[14] "AES . . . should have received 2 partial payments and 335 full month payments" over that period.[15] Instead, AES "received 2 partial month payments and 334 full month payments."[16]

---

[9] *See* Def.'s Resp. to Pl.'s Mot. to Remand with Br. in Supp. (Dkt. 18) at 10.

[10] *See* Asset Purchase Agreement (Dkt. 18, Ex. 2) at 8.

[11] *See* Def.'s Resp. to Pl.'s Mot. to Remand with Br. in Supp. (Dkt. 18) at 10.

[12] *See* Check Request and Distribution Form (Dkt. 18, Ex. 7); Def.'s Resp. to Pl.'s Mot. to Remand with Br. in Supp. (Dkt. 18) at 10.

[13] *See* April 18, 2019, Email from AES to OG&E (Dkt. 18, Ex. 8).

[14] *Id.*

[15] *Id.*

[16] *Id.*

OG&E responded with an email of its own a little less than two weeks later.[17] After retrieving some information and crunching some numbers, OG&E concluded that it had paid its bills in full.[18]

On May 1, 2020, AES sent OG&E a notice of default for the unpaid balance.[19] A week later, on May 8, 2020, AES brought suit against OG&E in the District Court of Oklahoma County, asserting a claim for breach of contract under the PSA.[20] OG&E removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446 on September 8, 2020.[21]

Now, AES, with its Motion to Remand and Brief in Support (Dkt. 11), asks the Court to remand the action back to the District Court of Oklahoma County. OG&E, on the other hand, maintains that removal was proper and that the action should remain in federal court.

The disagreement as to the proper forum stems from two competing forum selection clauses, one in the PSA and the other in the APA. The PSA provides that "[i]n the event that litigation becomes necessary with respect to any aspect of this Agreement . . ., such dispute is to be resolved in the District Court of Oklahoma County, Oklahoma."[22] The APA, meanwhile, provides that "any legal action or proceedings with respect to this

---

[17] *See* April 29, 2019, Email from OG&E to AES (Dkt. 18, Ex. 9).

[18] *See id.*

[19] *See* Notice of Default (Dkt. 18, Ex. 10).

[20] *See* Pet. (Dkt. 1, Ex. 1) at 2–3.

[21] *See* Notice of Removal (Dkt 1.) at 1.

[22] Am. Power Sales Agreement (Dkt. 11, Ex. 1) § 14.1(a).

4

Agreement shall be brought in the United States District Court for the Western District of Oklahoma . . . ."[23] The question before the Court, then, is which of these provisions controls.

To that end, OG&E characterizes the APA as a "wholistic winding down and final resolution of all aspects of the decades long business relationship between the parties."[24] As such, it continues, the APA "supersede[d] and replace[d] any prior agreements relating to the Facility and the electric services it generates," including the PSA.[25] "Therefore," it concludes, "the agreement under which Plaintiff's alleged breach of contract claim . . . [actually] arises is the [APA], not the . . . [PSA]."[26] Accordingly, the APA's forum selection clause, "mandating" that "any legal action or proceedings . . . be brought in the United States District Court for the Western District of Oklahoma"[27] controls.[28]

AES makes a three-part argument in response. First, it points out that the debt it seeks to collect arose from its prior sale of power to OG&E pursuant to the PSA, long before the Parties entered into the APA.[29] Then, it argues that the APA specifically carved

---

[23] Asset Purchase Agreement (Dkt. 18, Ex. 2) § 15.14.

[24] Notice of Removal (Dkt. 1) at 2–3.

[25] *Id.* at 3.

[26] *Id.*

[27] Asset Purchase Agreement (Dkt. 18, Ex. 2) § 15.14.

[28] *See* Notice of Removal (Dkt. 1) at 3–4, 6, 8.

[29] *See* Pl.'s Mot. to Remand and Br. in Supp. (Dkt. 11) at 2 (asserting that "the Petition makes clear that the debt AES seeks to collect from OG&E was the result of OG&E failing to pay amounts incurred as a result of Net Electrical Output OG&E received from AES pursuant to the PSA's terms" and that the debt was "incurred prior to the APA's closing" in May 2019).

5

out the debt at issue, pointing to several provisions that exclude defined categories of assets from the ambit of that agreement.[30] The implication, here, is that by carving out this asset, the APA did not supersede the PSA. Finally, AES contends that the PSA controls and contains a mandatory forum selection clause that requires actions brought "with respect to" that agreement, like this one, be litigated solely in the District Court of Oklahoma County.[31] Accordingly, remand is not only proper, but required.[32]

## *Discussion*[33]

As a preliminary matter, the Court finds that the breach of contract claim is brought "with respect to" the PSA. The PSA required AES "to make available and sell" to OG&E,

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] In making choice of law determinations in a diversity case, the Court applies Oklahoma's choice of law rules. *Shearson Lehman Bros., Inc. v. M & L Invs.*, 10 F.3d 1510 (10th Cir. 1993). "[I]n Oklahoma, the established choice of law rule in contract actions known as *lex loci contractus* is that, *unless the contract terms provide otherwise*, the nature, validity, and interpretation of a contract are governed by the law where the contract was made." *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 14, 164 P.3d 1028, 1033–34 (emphasis added) (footnotes omitted); *see also Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007).

> Because conflicts of law are inevitable in a federal system, parties to a contract are empowered to and frequently do choose a particular state's law to apply to the execution and interpretation of the contract. Absent special circumstances, courts usually honor the parties' choice of law because two "prime objectives" of contract law are "to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."

*Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999) (citations omitted).

In this case, both the PSA and the APA provide clearly and unambiguously that Oklahoma law shall govern any dispute arising therefrom. *See* Am. Power Sales Agreement (Dkt. 11,

and OG&E "to accept and purchase" from AES, "the entire Net Electrical Output of the Facility."[34] In asserting its breach of contract claim, AES alleges that it delivered power in accordance with the PSA, but OG&E did not pay.[35] Plainly, AES asserts a breach of contract claim "with respect to" the PSA.[36]

OG&E does not contest this conclusion. In fact, OG&E effectively concedes that the breach of contract claim, at least in the first instance (i.e., setting aside the APA), arises from the PSA. Stymied, OG&E pivots, arguing instead that the APA superseded the PSA.

It is true that "contractual obligations may be discharged by a subsequent agreement whose effect is to alter, modify or supersede the terms of the original agreement or to rescind it altogether."[37] But "[a] new contract *with reference to the subject matter of a former one* does not supersede the former and destroy its obligations, *except in so far as the new one is inconsistent therewith* . . . ."[38] To that end, the Oklahoma Supreme Court has instructed that where there is no ambiguity in the contract language, "the legal effect

---

Ex. 1) § 14.1(a); Asset Purchase Agreement (Dkt. 18, Ex. 2) § 15.08. The Court also notes that "[i]n this circuit, forum-selection clauses are . . . construed according to the governing law selected in the contract," *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1092 n.2 (10th Cir. 2019) (citation omitted), and further that the Parties do not dispute that Oklahoma law controls. For all these reasons, the Court applies Oklahoma law.

[34] Am. Power Sale Agreement (Dkt. 11, Ex. 1) § 2.1.

[35] *See* Pet. (Dkt. 1, Ex. 1) ¶¶ 5, 11.

[36] The April 18, 2019, email from AES to OG&E—the earliest salvo in the dispute—confirms this: "AES . . . should have received 2 partial payments and 335 full month payments" under the PSA, but "received [only] 2 partial month payments and 334 full month payments." April 18, 2019, Email from AES to OG&E (Dkt. 18, Ex. 8).

[37] *Shawnee Hosp. Auth. v. Dow Const., Inc.*, 1990 OK 137, 812 P.2d 1351, 1353.

[38] *Fane Dev. Co. v. Townsend*, 1963 OK 18, 381 P.2d 1012, 1016 (emphasis added) (citation omitted).

of the later contract on the former must be gathered from a four-corners' examination of the contractual instrument in question."[39]

The Court finds that the APA is not the "wholistic winding down and final resolution of all aspects of the decades long business relationship between [AES and OG&E]" that OG&E makes it out to be.[40] Rather, an examination of the four corners of the APA clearly and unambiguously establishes that the APA and the PSA are distinct contracts meant to effectuate distinct transactions without conflict. First, at a high level, the subject matter of the contracts is different: The APA effectuated the sale of the Facility, whereas the PSA effectuated the sale of the power generated by the Facility. Further, and at a more granular level, the later transaction expressly preserves the earlier transaction. Under the APA, AES agreed to sell OG&E certain "Purchased Assets."[41] "Purchased Assets" are distinguished from "Retained Assets," a category of assets that, as the name suggests, are retained by AES notwithstanding the APA.[42] Crucially, "Retained Assets" include "[a]ll accounts receivable from any source with respect to goods and services provided by [AES] prior to the Closing Date"[43] in May of 2019.[44] The debt for which AES asserts its breach of contract claim is just such a "Retained Asset": It is an accounts receivable for power delivered in accordance with the PSA sometime in the "period of Jan

---

[39] *Shawnee Hosp.*, 1990 OK 137, 812 P.2d at 1353–54, 1354 n.15.

[40] Notice of Removal (Dkt. 1) at 2–3.

[41] Asset Purchase Agreement (Dkt. 18, Ex. 2) § 2.01.

[42] *See id.* § 1.01 (defining "Purchased Assets" as excluding "Retained Assets").

[43] *Id.* § 1.01, Schedule V.

[44] *See* Notice of Removal (Dkt. 1) at 4–5.

1991 through Jan 15 2019."[45] In effect, the APA structures a new transaction while carefully preserving the old.

Moreover, there is no conflict between the respective forum selection clauses, as each is limited to its particular transaction by its express terms. The PSA provides that "[i]n the event that litigation becomes necessary with respect to any aspect of *this Agreement* . . . ., such dispute is to be resolved in the District Court of Oklahoma County, Oklahoma."[46] Likewise, the APA provides that "any legal action or proceedings with respect to *this Agreement* shall be brought in the United States District Court for the Western District of Oklahoma . . . ."[47] Thus, the Parties may, consistent with both forum selection clauses, litigate claims arising from the PSA in state court and claims arising from the APA in federal court. Contrast this with *Prism Corp. v. BlueRay Energy Intern., LLC*,[48] cited by OG&E. In *Prism*, the forum selection clause in the later contract expressly applied to all actions "relating to" the earlier contracts as well: "[A]ny suit or proceeding brought by one [party] against the other in any way relating to the Purchase and Sale Agreements" (i.e., the earlier agreements) "or relating to this Escrow Agreement" (i.e., the later agreement) "shall be [brought] in [a state or federal court located in] Vanderburgh County, Indiana . . . ."[49]

---

[45] April 18, 2019, Email from AES to OG&E (Dkt. 18, Ex. 8).

[46] Am. Power Sales Agreement (Dkt. 11, Ex. 1) § 14.1(a) (emphasis added).

[47] Asset Purchase Agreement (Dkt. 18, Ex. 2) § 15.14 (emphasis added).

[48] 2011 WL 5509035 (N.D. Okla. Nov. 10, 2011).

[49] *Prism*, 2011 WL 5509035, at *1.

No other provision of the APA conflicts with or purports to supersede the relevant provisions of the PSA either. For example, unlike in *Prism*, there is no provision in the APA that provides that "[t]o the extent the provisions of th[e] [APA] and provisions of the [PSA] are in conflict or are otherwise inconsistent, the [PSA] shall be deemed amended . . . and the provisions of the [APA] shall control."[50]

In sum, the APA and the PSA effectuate distinct transactions, the APA specifically carves out the asset at issue, and no other provision of the APA conflicts with, or purports to alter or supersede, the PSA. As such, the APA and the PSA can and do exist in perfect harmony.

Having determined that AES's breach of contract claim is brought "with respect to" the PSA and that the APA does not supersede the PSA, the Court finds that the PSA's forum selection clause controls. As a result, the Court must next determine the effect of that forum selection clause.

There are permissive and mandatory forum selection clauses. A permissive forum selection clause may or may not result in remand,[51] whereas a mandatory forum selection clause requires remand.[52] In this case, the relevant forum selection clause states that "[i]n the event that litigation becomes necessary with respect to any aspect of this Agreement .

---

[50] *Id.* at *2.

[51] *See Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926–27 (10th Cir. 2005) ("[P]ermissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere.").

[52] *See id.* at 926 ("The difference between a mandatory and permissive forum selection clause is that mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." (cleaned up)).

. ., such dispute is to be resolved in the District Court of Oklahoma County, Oklahoma."[53] The language "is to be resolved," coupled with the identification of a specific venue, is unmistakably compulsory.[54] Accordingly, the Court must remand this action back to the District Court of Oklahoma County.

### *Conclusion*

The PSA's forum selection clause controls and requires this Court to remand this action back to the District Court of Oklahoma County. Accordingly, the Court hereby **GRANTS** Plaintiff's Motion to Remand (Dkt. 11) and **REMANDS** this action back to the District Court of Oklahoma County.

**IT IS SO ORDERED** this 1st day of March 2021.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[53] Am. Power Sales Agreement (Dkt. 11, Ex. 1) § 14.1(a).

[54] *See American Soda*, 428 F.3d at 927 ("[W]hen a venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory.").